IN RE: INQUIRY CONCERNING A JUDGE, NO. 147, ALLEN W. HARRELL, RESPONDENT

No. 484A91

(Filed 5 March 1992)

**Judges § 7 (NCI3d) — censure of district court judge — conduct prejudicial to administration of justice**

A district court judge is censured by the Supreme Court for conduct prejudicial to the administration of justice that brings the judicial office into disrepute for his actions in involving himself in a criminal child abuse case in the district in which he was sitting by acting as an advocate for the female defendant during police questioning; attempting to dissuade the investigating officer from pursuing the investigation and bringing charges against the defendants; requesting that magistrates release the defendants on unsecured bonds; attempting to influence the selection of an attorney to represent the defendants; and seeking an opinion from the Attorney General's office concerning an aspect of the case through a letter which implied that respondent would be the presiding judge and which failed to reveal that respondent was actually involved as a witness for the defense.

IN RE HARRELL

[331 N.C. 105 (1992)]

**Am Jur 2d, Judges §§ 18-20, 98, 112.**

Justices MEYER, WEBB and LAKE did not participate in the consideration or decision of this case.

THIS matter is before the Court upon a recommendation by the Judicial Standards Commission, filed with the Court on 29 October 1991, that Judge Allen W. Harrell, a Judge of the General Court of Justice, District Court Division, Seventh Judicial District of the State of North Carolina, be censured for conduct prejudicial to the administration of justice that brings the judicial office into disrepute. Calendared in the Supreme Court 9 December 1991.

*No counsel for the Judicial Standards Commission or for the respondent.*

PER CURIAM.

The Judicial Standards Commission (Commission) notified Judge Allen W. Harrell on 19 October 1990 that it had ordered a preliminary investigation to determine whether formal proceedings under Commission Rule 7 should be instituted against him. The subject matter of the investigation included allegations that the respondent improperly involved himself in *State v. Wadell Williams* and *State v. Virginia Williams* by attempting to dissuade the investigating officer from pursuing the investigation and bringing charges against the defendants and by seeking an opinion from the Attorney General's office concerning an aspect of the case through a letter which implied that the respondent would be the presiding judge and failed to reveal that the respondent was actually involved as a witness for the defense.

Special Counsel for the Commission filed a complaint on 18 February 1991. Respondent answered the complaint and prayed that the action be dismissed and that no recommendation of discipline be forwarded to the North Carolina Supreme Court as provided by N.C.G.S. § 7A-377, the Code of Judicial Conduct and the Rules of the Judicial Standards Commission.

On 29 July 1991, respondent was served with a Notice of Formal Hearing concerning the charges alleged against him. On 5 September 1991, respondent was accorded a plenary hearing before seven members of the Commission on the charges contained in the complaint. The Commission's evidence was presented by James

## IN RE HARRELL

[331 N.C. 105 (1992)]

J. Coman, Senior Deputy Attorney General, and respondent was represented by his counsel, Allen G. Thomas, Don Evans, and Donald L. Smith. After hearing the evidence, the Commission concluded on the basis of clear and convincing evidence that

1. . . . the totality of the actions of the respondent in interceding at every stage of the proceedings on behalf of Mr. and Mrs. Williams constitutes:

   a. conduct in violation of Canons 2 and 3A(4) of the North Carolina Code of Judicial Conduct;

   b. conduct which disregards the spirit of Canons 3C(1)(a) and 5F of the North Carolina Code of Judicial Conduct; and

   c. conduct prejudicial to the administration of justice that brings the judicial office into disrepute.

2. . . . [from] the totality of the circumstances surrounding the respondent's actions . . . the respondent did not engage in *willful misconduct in office* as that phrase has been defined by the North Carolina Supreme Court.

(Emphasis in original.) The findings upon which the Commission based its conclusion are found in paragraph 9 of its Recommendation and are as follows:

9. Over the years the respondent and his wife had developed and maintained a very close friendship with Virginia Williams, a relationship he considered to be almost parent-child in nature. In late October of 1989 the respondent learned that juvenile proceedings had been initiated concerning suspected child abuse or neglect of Nehemiah Williams by Virginia Williams and her husband who were Nehemiah's adoptive parents. Perceiving this action involving his close personal friends to be a horrible mistake and relying on his own version of disputed evidentiary facts, the respondent, then a sitting judge in the judicial district in which the juvenile proceeding was pending, embarked on a course of conduct in which he interjected himself at every stage of the matter and at times during the course of proceedings in the matter and acted as an advocate for and to the benefit of Mr. and Mrs. Williams as follows:

   a. On February 6, 1990, the respondent accompanied Mr. and Mrs. Williams to the Wilson Police Department where

they were to be questioned in conjunction with the investigation of possible criminal child abuse charges. At his own request and with the consent of investigating officer James Faison, the respondent was present during officer Faison's attempted interview of Mrs. Williams. The respondent, after witnessing Mrs. Williams' signature on a waiver of rights form, assumed the role of advocate for her by advising her not to answer any questions even though the respondent was aware that she was prepared to talk to officer Faison. Furthermore, in an effort to influence officer Faison's ultimate decision as to whether to pursue the investigation and seek an arrest warrant, the respondent discussed with and offered to provide officer Faison research materials which he felt would illustrate to officer Faison the respondent's belief that prosecution was not justified and which would hopefully persuade officer Faison to terminate the investigation. After talking with the respondent and reviewing the research materials which the respondent made available to him the following day, officer Faison did in fact terminate the investigation and closed the case.

b. Upon learning in mid-July of 1990 that the case had been reopened and criminal child abuse arrest warrants were going to be served on Mr. and Mrs. Williams, and expecting that a significant bond ordinarily would be set in such a case, the respondent telephoned the Wilson County magistrate's office and spoke with magistrate Sherwood Batchelor. The respondent advised magistrate Batchelor that the Williamses would be coming in on a child abuse case [to have warrants served on them]. The respondent also informed magistrate Batchelor and asked him to advise the other magistrates that the respondent knew Mr. and Mrs. Williams to be reliable people, that they would appear in court and that the respondent suggested they be released on unsecured bonds. As a result of the respondent's conversation with magistrate Batchelor, the substance of which was reduced to writing by magistrate Batchelor and left for the information of other magistrates, magistrate Robert Smith released Mr. Williams on July 18, 1990, on a $500.00 unsecured bond, and magistrate Batchelor released Mrs. Williams on July 27, 1990, on her written promise to appear. Both magistrates were acting in accordance with the respondent's suggestion.

**IN RE HARRELL**

[331 N.C. 105 (1992)]

c. In August of 1990 the respondent telephoned Ann Murray, Wilson County assistant clerk of superior court, and told her that Mrs. Williams was coming in to complete an affidavit of indigency to see if she and her husband qualified for a court-appointed attorney. The respondent also told Ms. Murray that if Mrs. Williams did qualify, he wanted a capable attorney appointed to look after Mrs. Williams' side of the issue. At the time the respondent talked with Ms. Murray, he was aware that Mr. and Mrs. Williams were dissatisfied with the attorney appointed to represent them in the juvenile proceedings and that they wanted to avoid appointment of the same attorney for their criminal case as would be customary. The respondent then suggested to assistant clerk Murray that either Tom Sallenger or Randy Hughes be appointed to the exclusion of others in an effort to influence and insure the selection of an attorney whom the respondent felt would properly represent the Williamses in their criminal case. Within an hour of this conversation Mrs. Williams came to assistant clerk Murray's office, completed an affidavit of indigency form, and ultimately was determined by Ms. Murray not to qualify for a court-appointed attorney. In addition, assistant clerk Murray had occasion to see attorney Tom Sallenger, one of the two attorneys the respondent had suggested for appointment, within an hour or so of her conversation with the respondent and told attorney Sallenger about the conversation. Thereafter, but prior to Mrs. Murray's determination that Mrs. Williams did not qualify for a court-appointed attorney, attorney Sallenger advised Ms. Murray that he would be available for the appointment and would represent Mrs. Williams *pro bono* if she did not qualify for a court-appointed attorney. This information was communicated to the respondent by Ms. Murray, and attorney Sallenger did in fact represent the Williamses at their trial on September 10, 1990.

d. On August 13, 1990, the respondent wrote to Attorney General Lacy H. Thornburg indicating that he was "involved with" a child abuse case and ostensibly was seeking an opinion concerning the meaning of "physical injury" as used in G.S. 14-318.2, the offense with which the Williamses were charged. In addition, the respondent at the same time advocated the Williams' position in the letter in an effort to obtain favorable information which the respondent could and intended to use

**IN RE HARRELL**

[331 N.C. 105 (1992)]

to put an end to their prosecution which the respondent considered a tragedy.

Based upon these findings of fact and conclusions of law, the Commission recommended that the Supreme Court of North Carolina censure the respondent. On 30 October 1991, pursuant to Rule 2(a) of the Rules Governing Supreme Court Review of Recommendations of the Judicial Standards Commission, the Clerk of this Court forwarded to the respondent and his counsel a certified true copy of the Findings of Fact, Conclusions of Law, and Recommendations of the Judicial Standards Commission, together with a copy of the Rules Governing Supreme Court Review of Recommendations of the Judicial Standards Commission. Respondent was also advised, as provided in Rule 2(b), that he had ten (10) days from the date shown on the return receipt in which to petition the Supreme Court for a hearing. The return receipt, properly filed with this Court, shows a delivery date of 31 October 1991. No petition having been filed with this Court for a hearing, and no briefs having been filed in this case by any party, an order was entered by this Court on 4 December 1991, that this case be disposed of on the record.

> A proceeding before the Judicial Standards Commission is "an inquiry into the conduct of one exercising judicial power . . . . Its aim is not to punish the individual but to maintain the honor and dignity of the judiciary and the proper administration of justice." *In Re Nowell*, 293 N.C. 235, 241, 237 S.E.2d 246, 250 (1977). The recommendations of the Commission are not binding upon the Supreme Court, and this Court must consider all the evidence and exercise its independent judgment as to whether it should censure the respondent, remove him from office, or decline to do either. *In re Martin*, 295 N.C. 291, 301, 245 S.E.2d 766, 772 (1978).

*In re Bullock*, 328 N.C. 712, 717, 403 S.E.2d 264, 266 (1991).

We have carefully examined the evidence presented to the Commission. We conclude that the findings of fact made by the Commission in paragraph 9 are supported by clear and convincing evidence. *See In Re Kivett*, 309 N.C. 635, 309 S.E.2d 442 (1983). We also agree with the Commission's conclusions of law. We therefore adopt the Commission's findings, conclusions, and recommendation of censure.

Now, therefore, it is ordered by the Supreme Court of North Carolina, in Conference, that the respondent, Judge Allen W. Harrell, be, and he is hereby, censured by this Court for conduct prejudicial to the administration of justice that brings the judicial office into disrepute.

Justices MEYER, WEBB and LAKE did not participate in the consideration or decision of this case.