IN RE: INQUIRY CONCERNING A JUDGE, NO. 238 CRAIG B. BROWN, RESPONDENT

No. 18A00

(Filed 5 May 2000)

**Judges— censure—conducting business outside of court**

A district court judge was censured for knowingly convicting a defendant of careless and reckless driving even though defendant had not been charged with that offense and for taking a guilty plea in a hallway. The judge should have known that careless and reckless driving is not a lesser included offense of DWI and conducting business outside of open court will not be condoned. Respondent overstepped his authority, engaged in misconduct, and brought disrepute to the judiciary.

This matter is before the Court upon a recommendation by the Judicial Standards Commission, entered 28 December 1999, that respondent, Judge Craig B. Brown, a Judge of the General Court of Justice, District Court Division, Fourteenth Judicial District of the State of North Carolina, be censured for willful misconduct and conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of Canons 2A, 3A(1), and 3A(4) of the North Carolina Code of Judicial Conduct. Heard in the Supreme Court 17 April 2000.

*William N. Farrell, Jr., Special Counsel, for the Judicial Standards Commission.*

*Robert A. Hassell and Brian Michael Aus for respondent-appellant.*

**IN RE BROWN**

[351 N.C. 601 (2000)]

## ORDER OF CENSURE

The Judicial Standards Commission (Commission) notified Judge Craig B. Brown (respondent) on 16 December 1998 that it had ordered a preliminary investigation to determine whether formal proceedings under Commission Rule 9 should be instituted against him. The subject matter of the investigation included an allegation that respondent had engaged in the improper practice of convicting a defendant of careless and reckless driving when he was charged with driving while impaired (DWI). There were further allegations that the conviction was rendered out of court at a time when the case was not calendared and after discussing the case *ex parte* with defense counsel a few days earlier.

On 15 July 1999, special counsel for the Commission filed a complaint alleging, *inter alia*, as follows:

3. The respondent has engaged in conduct inappropriate to his judicial office on the following occasions:

a. The respondent presided over the July 30, 1998, traffic court session of Durham County District Court and tried the case of *State v. Ludwig Charles Debraeckeleer*, Durham County file no. 97 CR 32970, in which the defendant was charged with driving while impaired (DWI) in violation of G.S. 20-138.1. The respondent granted defense counsel's motion to dismiss the DWI charge made at the conclusion of the State's evidence. The respondent then declared the defendant guilty of careless and reckless driving, a violation of G.S. 20-140 which was neither a lesser included offense of DWI nor an offense with which the defendant had been charged and to which the defendant had pleaded. The respondent rendered this guilty verdict and entered judgment on it over the objection of defense counsel and knowing or having reason to know such a disposition was improper in these circumstances.

b. On September 1, 1998, the respondent met *ex parte* with J. Wesley Covington, attorney for the defendant in *State v. Kenneth Arthur Podger, Jr.*, Durham County file no. 98 CR 05350, in which the defendant was charged with driving while impaired (DWI) in violation of G.S. 20-138.1 and had a [B]reathalyzer reading of .15. During this meeting, the respondent agreed to counsel's request that the respondent hear the case on September 3, 1998. In addition, after discussing the facts of the case and the defendant's driving record, the respondent agreed to convict the

**IN RE BROWN**

[351 N.C. 601 (2000)]

defendant of careless and reckless driving, a violation of G.S. 20-140 which was not a lesser included offense of DWI nor an offense with which the defendant had been charged. About noon on September 3, 1998, while the respondent was presiding over a session of domestic violence court, attorney Covington appeared in the respondent's courtroom along with Covington's associate William C. Fleming, Jr., defendant Podger, charging officer T.P. Cullinan, and assistant district attorney Brian T. Beasley. Upon their arrival and after Covington reminded the respondent about the *Podger* case, the respondent invited them all to step out of the courtroom into the hallway and then disposed of the *Podger* case as he had agreed to do two (2) days earlier by finding the defendant guilty of careless and reckless driving and entering judgment thereon. The respondent disposed of the case out-of-court, when the case was not calendared and neither the case file nor a courtroom clerk were present, and when the respondent knew or should have known that finding the defendant guilty of careless and reckless driving and entering judgment thereon was improper in these circumstances.

4. The actions of the respondent constitute willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute and are in violation of Canons 2A, 3A(1), and 3A(4) of the North Carolina Code of Judicial Conduct.

On 10 August 1999, respondent answered the complaint, admitting the facts as alleged in paragraph 3(a), except as to (1) the guilty verdict to careless and reckless driving being willfully improper, and (2) erroneously believing under the circumstances that he was entitled to enter a verdict of guilty to careless and reckless driving in the case. As to paragraph 3(b), respondent admitted in part and denied in part. In his answer, respondent stated that when Covington approached him, Covington informed respondent that the district attorney was aware of and consented to the *ex parte* meeting. Respondent specifically denied that he knew or should have known at the time that the *Podger* matter was not duly calendared. Respondent denied that finding the defendant guilty of careless and reckless driving and entering judgment thereon was improper in the circumstances of the *Podger* case. As to paragraph 4, respondent denied that his actions constituted willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute.

On 17 September 1999, respondent was served with a notice of formal hearing concerning the charges alleged. The Commission conducted the hearing on 4 and 5 November 1999, at which time both parties presented evidence and arguments. Evidence was presented tending to support the allegations in the complaint. After hearing the evidence, the Commission concluded that respondent's actions constituted:

a. conduct in violation of Canons 2A, 3A(1), and 3A(4) of the North Carolina Code of Judicial Conduct with respect to the facts found in paragraphs 9 and 10 [of the Commission's recommendation];

b. conduct prejudicial to the administration of justice that brings the judicial office into disrepute as defined in *In re Edens*, 290 N.C. 299, 226 S.E.2d 5 (1976); and

c. willful misconduct in office as defined in *In re Nowell*, 293 N.C. 235, 237 S.E.2d 246 (1977), and in light of *In re Martin*, 333 N.C. 242, 424 S.E.2d 118 (1993).

The Commission recommended that this Court censure respondent.

In proceedings pursuant to N.C.G.S. § 7A-376, this Court acts as a court of original jurisdiction, rather than in its usual capacity as an appellate court. *See In re Peoples*, 296 N.C. 109, 147, 250 S.E.2d 890, 912 (1978), *cert. denied*, 442 U.S. 929, 61 L. Ed. 2d 297 (1979). In reviewing the recommendations of the Commission, the recommendations are not binding upon this Court. We consider the evidence on both sides and then exercise independent judgment as to whether to censure, to remove, or to decline to do either. *See In re Nowell*, 293 N.C. 235, 244, 237 S.E.2d 246, 252 (1977).

The quantum of proof in proceedings before the Commission is proof by clear and convincing evidence. *See id.* at 247, 237 S.E.2d at 254. Such proceedings are not meant "to punish the individual but to maintain the honor and dignity of the judiciary and the proper administration of justice." *Nowell*, 293 N.C. at 241, 237 S.E.2d at 250. After thoroughly examining the evidence presented to the Commission, we conclude the Commission's findings of fact are supported by clear and convincing evidence and adopt them as our own. *See In re Harrell*, 331 N.C. 105, 110, 414 S.E.2d 36, 38 (1992). A thorough review of the record, transcript, briefs, and oral arguments revealed the following:

**IN RE BROWN**

[351 N.C. 601 (2000)]

## *State v. Debraeckeleer*

Respondent presided over the 30 July 1998 trial of *State v. Ludwig Charles Debraeckeleer*, Durham County file number 97 CR 32970, in which the defendant was charged with DWI in violation of N.C.G.S. § 20-138.1. The district attorney had moved to continue the case because the arresting officer was not present. Defense counsel, Michael Allan Jordan, objected to the continuance on the grounds the case was somewhat old and had been previously continued specifically to get witnesses to trial. The case was called for trial later that same day. After the State presented its evidence, Jordan moved to dismiss the DWI charge for insufficient evidence because there was no evidence of an arrest, an assessment of the defendant's condition, or an assessment of the Intoxilyzer results. Respondent subsequently allowed Jordan's motion to dismiss. However, respondent then pronounced a verdict of guilty of careless and reckless driving. In making this ruling, respondent indicated that the State had clearly not met its burden of proof but that there was sufficient evidence to convict of careless and reckless driving. Jordan objected in open court to the guilty verdict and informed respondent that the defendant had not been charged with careless and reckless driving. Respondent indicated that he understood Jordan's position, but believed it to be reasonable and proper to convict the defendant of careless and reckless driving based on evidence of the accident, an odor of alcohol on the defendant's breath, and his physical appearance. Jordan later spoke with respondent in chambers regarding certain conditions of the order and reiterated his position that a finding of careless and reckless driving was improper. Respondent replied that he "thought [he] had [Jordan] over a barrel," meaning to Jordan that respondent understood that he should not have entered the ruling. Respondent also indicated to Jordan that he did not think it was wise for Jordan to appeal the case because the State would probably get the missing trooper to court and Jordan would have less of a chance of winning on the DWI charge. At the hearing before the Commission, Jordan opined that respondent was aware that careless and reckless driving was not a lesser included offense of DWI and that this was common knowledge for those who practice in criminal courts in Durham County.

Brian Beasley was the assistant district attorney for Durham County who called the *Debraeckeleer* case for trial before respondent. At the hearing before the Commission, he indicated that careless and reckless driving is not a lesser included offense of

DWI and that he did not ask respondent to convict the defendant of careless and reckless driving. Beasley testified that he was shocked when respondent found the defendant guilty of careless and reckless driving. It was his opinion that the verdict was legally improper. Beasley also believed that respondent knew the verdict was not proper, as it was common knowledge that careless and reckless driving was not a lesser included offense to DWI. He believed it was common knowledge because the case of *In re Martin* had been discussed in the news media's coverage of the 1998 race for the North Carolina Supreme Court. Beasley further indicated that he understood from *In re Martin* that a judge could not enter a verdict of careless and reckless driving for a DWI charge. In addition, Beasley heard respondent say he thought he had Jordan "over a barrel" with his verdict.

Respondent testified that he found the defendant guilty of careless and reckless driving because he felt it was a "horrible DWI" and he was following the evidence that the defendant crossed the center line twice before the head-on collision. Respondent agreed that careless and reckless driving was not a lesser included offense of DWI but testified that the evidence was so compelling that he did not even think of that when he made his ruling.

Durham County Chief District Court Judge Kenneth Titus testified that respondent knew careless and reckless was not a lesser included offense of DWI because of a conversation they had involving the *Debraeckeleer* case.

### State v. Podger

On 1 September 1998, respondent had an *ex parte* meeting with Jay Wesley Covington and William Charles Fleming, Jr., attorneys for the defendant, concerning *State v. Kenneth Arthur Podger*, Durham County file no. 98 CR 05350, in which the defendant was charged with DWI in violation of N.C.G.S. § 20-138.1. At the hearing before the Commission, Fleming testified that after explaining the facts of the *Podger* case to respondent, Covington asked respondent if he would be willing to hear the DWI trial two days later. Covington then told respondent that he wanted to obtain a careless and reckless plea for the defendant. Fleming testified that Covington said "he was charging [the defendant] a huge fee in the case, and that if [respondent] found [the defendant] guilty of careless and reckless, that a substantial portion of that fee would flow through to the appropriate political campaigns." Respondent then agreed to reduce the charge and find the

**IN RE BROWN**

[351 N.C. 601 (2000)]

defendant guilty of careless and reckless driving, indicating to Fleming there was a predetermined outcome.

On 3 September 1998, while respondent was presiding over domestic violence court, Covington appeared in respondent's court-room with his associate, Fleming; the defendant; and the charging officer, Terry P. Cullinan. Fleming testified that Covington asked to approach the bench and then said, "I just wanted to remind you that we're to do the Podger trial today, and you're going to find him guilty of careless and reckless. You're going to fine him $1,000. You're going to give him community service and probation." Assistant District Attorney Brian T. Beasley then arrived in the courtroom. Subsequently, respondent, Covington, Fleming, the defendant, Beasley, and Cullinan left the courtroom and moved into the hallway. Once in the hallway, with no court clerk present, Covington recited the facts of the case, as he had two days prior, and then asked respondent for a conviction of careless and reckless driving. Fleming testified that respondent then asked Beasley if the State agreed with the facts recited by Covington. When Beasley responded affirmatively, respondent stated, "Well, in that case, I'll find [the defendant] guilty of careless and reckless, fine him $1,000, give him probation, community service."

Respondent testified before the Commission that Covington approached him in the hallway on 1 September 1998 and indicated he needed some help in a DWI case. Covington was looking to obtain a careless and reckless driving plea. Respondent indicated that he did not take Covington seriously and that he did not remember Covington mentioning a huge fee. However, respondent agreed to hear the *Podger* matter on 3 September 1998, as he was the resident traffic court judge that week. Respondent testified that on 3 September 1998 Covington approached respondent during a mid-morning break. Respondent asked Covington some questions about the *Podger* case and about the defendant's record. Covington stated that the defendant had a prior DWI conviction from 1994 in which the defendant had blown a .08. Respondent indicated that he would agree to careless and reckless driving only with consent of the State. Around noon on 3 September, Beasley and Covington approached respondent, and Covington indicated that there was a plea agreement. Respondent asked them to step into the hallway so he could assess the plea because there was noise in the courtroom. Respondent did not believe the court clerk's presence was required. Once in the hallway, Covington informed respondent that the defend-

ant had blown a .15 in the case at issue. When respondent asked Beasley and Cullinan if they consented to the plea, both responded in the affirmative. Respondent then imposed a standard careless and reckless judgment. Respondent subsequently learned that the defendant had another prior DWI conviction in addition to the one Covington mentioned and that the prior DWI mentioned by Covington was actually in 1993 when the legal limit was .10. Thereafter, respondent testified that he filed a *sua sponte* motion pursuant to N.C.G.S. § 15A-1021(c) to vacate the judgment because he felt critical facts had been misrepresented to him or omitted. Although respondent believed that he had the authority to enter the plea out of court pursuant to N.C.G.S. § 7A-191, he apologized for taking the plea in the hallway, acknowledged there was a pall cast on the administration of justice, and stated he would never do anything other than bond reductions outside of the courtroom.

The Commission alleges respondent violated Canons 2A, 3A(1), and 3A(4) of the North Carolina Code of Judicial Conduct. Canon 2A provides: "A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Code of Judicial Conduct Canon 2A, 2000 Ann. R. 274 (Lexis). Canon 3A(1) provides: "A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism." Code of Judicial Conduct Canon 3A(1), 2000 Ann. R. 276 (Lexis). Lastly, Canon 3A(4) provides:

A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him.

Code of Judicial Conduct Canon 3A(4), 2000 Ann. R. 276 (Lexis).

Censure or removal of a judge is governed by N.C.G.S. § 7A-376, which provides:

Upon recommendation of the Commission, the Supreme Court may censure or remove any judge for willful misconduct in office, willful and persistent failure to perform his duties, habitual intemperance, conviction of a crime involving moral turpi-

**IN RE BROWN**

[351 N.C. 601 (2000)]

tude, or *conduct prejudicial to the administration of justice that brings the judicial office into disrepute.*

N.C.G.S. § 7A-376 (1999) (emphasis added); *see also In re Renfer*, 347 N.C. 382, 384, 493 S.E.2d 434, 435 (1997). Section 7A-377 of the North Carolina General Statutes provides the procedure the Commission utilizes in recommending censure or removal of a justice or judge. N.C.G.S. § 7A-377 (1999).

In the instant case, the Commission found that respondent's actions constituted willful misconduct and were prejudicial to the administration of justice such that they brought the judicial office into disrepute. We have stated that "[w]ilful misconduct in office is improper and wrong conduct of a judge acting in his official capacity done intentionally, knowingly and, generally, in bad faith. It is more than a mere error of judgment or an act of negligence." *In re Edens*, 290 N.C. 299, 305, 226 S.E.2d 5, 9 (1976). "A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith." *Nowell*, 293 N.C. at 248, 237 S.E.2d at 255.

In addition, we have defined "[c]onduct prejudicial to the administration of justice that brings the judicial office into disrepute . . . as 'conduct which a judge undertakes in good faith but which nevertheless would appear to an objective observer to be not only unjudicial conduct but conduct prejudicial to public esteem for the judicial office.' " *Edens*, 290 N.C. at 305, 226 S.E.2d at 9 (quoting *Geiler v. Commission on Judicial Qualifications*, 10 Cal. 3d 270, 284, 515 P.2d 1, 9, 110 Cal. Rptr. 201, 209 (1973), *cert. denied*, 417 U.S. 932, 41 L. Ed. 2d 235 (1974)). "Wilful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute." *Nowell*, 293 N.C. at 248, 237 S.E.2d at 255 (emphasis omitted).

After carefully reviewing the evidence in this case, we conclude that respondent's actions in both the *Debraeckeleer* and *Podger* cases constituted willful misconduct and were prejudicial to the administration of justice such that they brought the judicial office into disrepute. As to the *Debraeckeleer* matter, it is clear that respondent knowingly convicted the defendant of careless and reckless driving when the defendant had not been charged with that offense. The evidence provided by Beasley, along with the testimony of Chief Judge Titus, also convinces us that respondent should have

known that careless and reckless driving is not a lesser included offense of DWI. Additional support for this conclusion is garnered from our recent pronouncement on this very issue. *See In re Martin*, 333 N.C. 242, 245, 424 S.E.2d 118, 119-20 (1993) (where this Court held, "[c]onvicting defendants of reckless driving when they were charged with [DWI] were acts which respondent knew to be improper and *ultra vires*, or beyond the powers of his office"). As respondent's conduct in the *Debraeckeleer* case was unquestionably "wilful misconduct," we must also conclude that his action was prejudicial to the administration of justice such that the judicial office was brought into disrepute. *Nowell*, 293 N.C. at 248, 237 S.E.2d at 255.

Regarding the *Podger* incident, it is important to note that criminal cases should be heard in open court, as they are the public's business. *See id.* at 249, 237 S.E.2d at 255; *Edens*, 290 N.C. at 306, 226 S.E.2d at 9-10. In *Edens*, this Court determined that the respondent's removal of a criminal case "outside the courtroom when court was not in session improperly removed the proceeding from the public domain where it belonged and made it instead a private matter." *Edens*, 290 N.C. at 306, 226 S.E.2d at 10. In the *Podger* case, respondent acknowledges that taking the guilty plea in the hallway "cast [a] pall" upon the administration of justice. We agree. At least since the *Nowell* case was published over twenty years ago, members of our judiciary have been on notice that conducting court business outside of open court will not be condoned. We are convinced that respondent should have known his action in taking the disposition of this case outside of the courtroom was improper and amounted to willful misconduct and conduct prejudicial to the judicial office. Moreover, respondent knew or had reason to know that it was improper to dispose of a DWI charge by convicting the defendant of careless and reckless driving. *See Martin*, 333 N.C. at 245, 424 S.E.2d at 119-20.

"Judges especially must be vigilant to act within the bounds of their judicial power." *Id.* at 245, 424 S.E.2d at 120. We have previously stated that "[e]ach judge and attorney in the courts of our State has a duty to uphold the legal process. Neither complacency nor the search for efficiency should obscure that responsibility." *In re Tucker*, 348 N.C. 677, 681, 501 S.E.2d 67, 70 (1998). As we recognized in *Nowell*, "[t]he power of the district court over the lives and everyday affairs of our citizens makes it imperative that the district court judges of the State not only be fully capable but also dedicated to carrying out their official responsibilities in accordance with the law and estab-

lished standards of judicial conduct." *Nowell*, 293 N.C. at 252, 237 S.E.2d at 257.

The conduct of respondent unquestionably warrants censure. Respondent overstepped his authority, engaged in misconduct, and brought disrepute to the judiciary of our State. We will not condone this conduct. It is deserving of our harshest criticism.

In light of the foregoing, we conclude that respondent's actions constitute conduct in violation of Canons 2A, 3A(1), and 3A(4) of the North Carolina Code of Judicial Conduct. Therefore, pursuant to N.C.G.S. §§ 7A-376 and 7A-377 and Rule 3 of the Rules for Supreme Court Review of Recommendations of the Judicial Standards Commission, it is ordered that respondent, Craig B. Brown, be and he is hereby, censured for willful misconduct and conduct prejudicial to the administration of justice that brings the judicial office into disrepute.

Done by Order of the Court in Conference, this the 4th day of May, 2000.

Freeman, J.
For the Court