BRADY, J.
This matter is before the Court upon a recommendation of censure from the Judicial Standards Commission (Commission) regarding the conduct of Judge Shirley H. Brown (respondent).
Preliminarily, we address respondent's contention that the Limitation of Proceedings clause of the North Carolina Code of Judicial Conduct bars disciplinary action in the present case because the conduct for which the Commission recommended censure occurred in 1996, more than three years before the commencement of the disciplinary proceeding at issue here. In response, theCommission contends that this Court exceeded its authority by adopting the Limitation of Proceedings clause. In the alternative, the Commission contends that even if the Court properly adopted the clause, it does not apply to the disciplinary proceeding against respondent because those proceedings were instituted before the effective date of the current Code of Judicial Conduct.
On 2 April 2003, this Court revised the North Carolina Code of Judicial Conduct, adopting a clause entitled Limitation of Proceedings. Code of Judicial Conduct, 2004 Ann. R. N.C. 377, 389. The limitation clause states in pertinent part: "Disciplinary proceedings to redress alleged violations of . . . this Code must be commenced within three years of the act or omission allegedly giving rise to the violation." Id.
Article IV, section 13(2) of the North Carolina Constitution mandates that "[t]he Supreme Court shall have exclusive authority to make rules of procedure and practice for the Appellate Division." N.C. Const. art. IV, § 13(2) (emphasis added). To that end, the General Assembly enacted N.C.G.S. § 7A-33, which states, "The Supreme Court shall prescribe rules of practice and procedure designed to procure the expeditious and inexpensive disposition of all litigation in the appellate division." N.C.G.S. § 7A-33 (2003) (emphasis added). Taken together, Article IV, section 13(2) of the North Carolina Constitution and N.C.G.S. § 7A-33 charge this Court with the constitutional authority and the statutory duty to adopt rules of procedure for the administration of justice in the appellatecourts of this state. Moreover, this Court is the sole entity authorized by the General Assembly "to prescribe standards of judicial conduct for the guidance of all justices and judges of the General Court of Justice." N.C.G.S. § 7A-10.1 (2003). Given the unique constitutional and statutory responsibilities of this Court to promulgate rules of appellate procedure, as well as rules and standards of conduct for the judiciary, the Court did not exceed its authority in adopting the Limitation of Proceedings clause of the Code of Judicial Conduct.
However, we do not agree with respondent's contention that the limitations clause bars disciplinary action in the present case. Here, the Commission filed a formal complaint against respondent on 13 February 2003, several weeks before this Court's 2 April 2003 adoption of the current Code of Judicial Conduct. Because disciplinary action was already pending against respondent at the time the Limitation of Proceedings clause came into effect, that action is not barred by the limitations clause. Cf. Bolick v. Am. Barmag Corp., 306 N.C. 364, 293 S.E.2d 415 (1982) (holding that statutes of limitations are generally employed prospectively only); Flippin v. Jarrell, 301 N.C. 108, 270 S.E.2d 482 (1980) (same); Blevins v. N.W. Carolina Utils., Inc., 209 N.C. 683, 184 S.E. 517 (1936) (same).
Concerning the recommendation of censure, special counsel for the Commission filed a complaint against respondent on 13 February 2003, alleging misconduct involving four matters over which she presided. The Commission concluded that respondent's actions regarding only one of the four matterswarranted a recommendation of censure. After reviewing the record, briefs, and all other evidence adduced at the hearing before the Commission, this Court concludes that respondent's conduct for which the Commission recommended censure may be described as follows:
In February 1995, Buncombe County District Court Judge Gary S. Cash presided over the adjudication hearing of juvenile C.P. Represented by assistant public defender Haley Haynes (now Haley Haynes Montgomery), C.P. admitted to the offense for which he was charged. Judge Cash found C.P. to be delinquent and continued the matter until 16 May 1995 for disposition pending the results of an assessment and psychological evaluation. On 16 May 1995, Judge Peter L. Roda further continued the matter until 12 September 1995. On the day of the scheduled disposition proceeding, Judge Cash consulted with Montgomery about rescheduling C.P.'s disposition for another date in the near future. Following that discussion, the disposition was calendared for 21 September 1995 and reassigned to respondent, who was the judge presiding over juvenile matters during that week.
Montgomery received the results of C.P.'s mental evaluation approximately a week before the 21 September disposition proceeding. Based upon her review of those results, Montgomery concluded that there might be grounds to question C.P.'s competency. On 20 September 1995, the day before the disposition proceeding, Montgomery learned from a colleague that she could raise the issue of C.P.'s competency at any time duringthe juvenile proceeding. Montgomery then prepared a "Motion and Order Committing Defendant to Dorothea Dix Hospital" for a competency evaluation.
On 20 September 1995, rather than seeking out respondent, whom Montgomery knew was assigned to hear C.P.'s disposition, she presented the motion ex parte to emergency Judge Robert L. Harrell. Montgomery was appearing before Judge Harrell that day in criminal court regarding another matter. Testimony before the Commission indicated some disagreement as to what Montgomery told Judge Harrell concerning the date of C.P.'s disposition. Nonetheless, based upon his discussion with Montgomery, Judge Harrell ordered that C.P. be transported to Dorothea Dix Hospital for a competency evaluation. Montgomery served Judge Harrell's order by leaving a copy with an administrative assistant at the office of the prosecutor and filed the order with the clerk's office at 4:31 p.m. that day.
The disposition hearing was held before respondent the following day, 21 September 1995. Several individuals, including a prosecutor, an attorney representing the Department of Social Services (DSS), and various mental health professionals from Broughton Hospital, the Juvenile Evaluation Center (now Swan Mental Health Academy), and Blue Ridge Mental Health Center were in the courtroom waiting for the case. Montgomery handed up Judge Harrell's order. Neither the prosecutor nor the DSS attorney was aware that the order had been entered. Respondent testified before the Commission that the common practice in Buncombe County District Court had been that only judges who wereassigned to hear a case would issue ex parte orders in those matters, absent an emergency. Based upon her understanding of this common practice, respondent became upset and left the courtroom. At that time, respondent sought out Judge Harrell and explained that the order had effectively delayed the disposition hearing for which several parties were present. Following this discussion, Judge Harrell rescinded his order.
Respondent returned to the courtroom, informed the parties of the action taken by Judge Harrell, and ordered a competency evaluation of C.P. by a local mental health professional. Respondent held over the matter until the afternoon session, pending results of that evaluation. Based upon the results of that evaluation, respondent concluded that C.P. was competent and moved forward with the hearing. Ultimately, respondent ordered that C.P. be sent to training school.
On 6 December 1995, respondent entered an administrative order regarding what she believed to be inappropriate conduct by Montgomery in relation to C.P.'s case. In the order respondent made findings of fact as to Montgomery's actions including a finding that Judge Harrell was "not aware, and he was not told, that the matter was set for disposition the next day." Based upon her findings of fact, respondent concluded that there was "no proper motive" for Montgomery's actions. Respondent noted that C.P. had already been committed to one state hospital for evaluation and that had Judge Harrell's order not been rescinded, C.P. would have been "transported to yetanother state mental institution." Respondent further concluded that "[t]he facts and circumstances stated herein appear to demonstrate a transparent effort by an officer of the court to circumvent the proper scheduling of a juvenile case without regard to the juvenile's welfare nor for the proper administration of justice." According to respondent, Montgomery's conduct "clearly" violated the North Carolina Rules of Professional Conduct. Montgomery was ordered to present all future "motions in juvenile matters to the judge actually presiding in juvenile court, absent a true emergency when such judge is unavailable." Respondent allowed Montgomery thirty days to file written objections and to request a hearing based upon the order. The order was placed in the confidential juvenile file on C.P.'s case.
Montgomery retained counsel, Jack W. Stewart, who filed an objection to the 6 December 1995 order on Montgomery's behalf and requested a meeting with then Chief District Court Judge Earl J. Fowler, Jr. A meeting was subsequently held on 25 January 1996 between Stewart, Chief Judge Fowler, and respondent. After Stewart and respondent were unable to find a mutually acceptable solution, Chief Judge Fowler entered an order setting a hearing before respondent to allow respondent to address Montgomery's objections to the 6 December 1995 order. The hearing was originally scheduled for 16 April 1996.
On or about 16 April 1996, Stewart submitted a motion requesting that respondent recuse herself from further hearings related to C.P.'s case. In support of the motion, Stewart citeda "patent conflict of interest" in permitting respondent to review her own order. Stewart based the conflict of interest charge on respondent's previous actions consisting of receiving evidence, deciding findings of fact, and preparing the contested order now at issue. At the hearing, subsequently held on 18 April 1996, respondent heard argument on the motion for recusal and denied it. In so doing, respondent stated,
I want to tell you that this was my order. It wasn't an order of any other judge. And the reason I put the last paragraph, that if she disputed facts found, that she'd have thirty days to file written objections, and I sort of anticipated they'd be specific instead of a general objection . . . and request for a hearing, it was certainly not anticipated that that hearing would be held before anyone else except me.
Thereafter, Stewart began enumerating specific objections to respondent's 6 December 1995 order. First, Stewart objected to that portion of the order which stated that respondent "was still in the courthouse in chambers and available to hear juvenile matters" at the time Judge Harrell signed the order for competency evaluation. Respondent then stated, "I guess we could deal with [that] just by taking my testimony under oath." Respondent later testified before the Commission that until this point in the hearing, she never anticipated that she would be a witness at the hearing. Stewart then lodged other objections to the order, including that portion noting that "[w]hen he signed the order, Judge Harrell was not aware, and he was not told, that the matter was set for disposition the next day." Respondent offered to strike that portion of the order;however, Stewart preferred to have Judge Harrell testify to the conversation under oath.
After Stewart listed Montgomery's remaining objections to the order, respondent asked Stewart, "Do you want sworn testimony from me as to my whereabouts on the afternoon of September the 20th?" Stewart responded, "I have no preference how your Honor chooses to proceed." Thereafter, respondent was sworn in and testified that she remained in the courthouse until at least 5:00 p.m. on 20 September 1995.
Stewart called three witnesses, each of whom was questioned by respondent, and respondent called and questioned one witness. Stewart lodged four objections to respondent's questioning of the witnesses, two of which respondent sustained, one of which was essentially withdrawn by Stewart, and one of which was overruled. Notably, when respondent sustained Stewart's first objection, she acknowledged, "How can I rule on an - I guess if you object, I have to sustain it because I'm the presiding judge, so I'll sustain it."
The witness called by respondent, DSS attorney Charlotte Wade, testified that respondent had previously informed her of the 18 April 1996 proceedings, that she was present in the courtroom of her own volition, and that she decided to testify only after hearing the other testimony presented. Stewart never objected to respondent's calling Wade as a witness, and when he objected to one of Wade's answers to respondent's question, respondent sustained the objection. Respondent never announced a decision orally or filed a written order based upon the 18 April 1996 hearing. Respondent testified before the Commission that she had decided the 6 December 1995 order should stand and therefore "left the order in effect" without taking further action.
Based upon this evidence, the Commission made the following findings of fact, in pertinent part:
7. The respondent presided over a hearing in the action In The Matter of [C.P.], Buncombe County file number 97 J 9001 on April 18, 1996. The said hearing was held pursuant to Notice of Objection and Exception to Ex Parte Order and Application for Hearing filed on December 28, 1995 by Jack W. Stewart (Stewart), attorney for Haley Haynes (Haynes) (now Haley Haynes Montgomery), who was the Assistant Public [D]efender representing [C.P.]. Stewart also filed a Motion for Recusal in the matter on April 16, 1996 requesting that the respondent recuse herself from hearing the matter as she was the Judge who issued the order imposing sanctions against Haynes that was the subject of the April 18, 1996 hearing. The respondent denied the Motion for Recusal.
8. While presiding over the April 18, 1996 hearing described in paragraph 7. above, the respondent personally testified under oath; conducted and ruled on objections to her own voir dire examination of witnesses called to testify by Stewart; and ruled on objections to respondent's voir dire examination of a witness called by respondent.
9. The respondent has never announced a decision nor entered any order as a result of the April 18, 1996 hearing described in paragraphs 7. and 8. above.
The Commission concluded as a matter of law that respondent's conduct violated Canons 2A., 3A.(5), 3C.(1)(a), and 3C.(1)(d)(iv) of the North Carolina Code of Judicial Conduct. The Commission further concluded that this conduct constituted "conduct prejudicial to the administration of justice that brings the judicial office into disrepute" and recommended that respondent be censured by this Court.
The Commission's "recommendations are not binding upon the Supreme Court, which will consider the evidence of both sides and exercise its independent judgment as to whether it should censure, remove or decline to do either." In re Nowell, 293 N.C. 235, 244, 237 S.E.2d 246, 252 (1977); see also N.C.G.S. § 7A-377 (2003); Rules for Supreme Court Review of Recommendations of the Jud'l Standards Comn'n 3, 2004 Ann. R. N.C. 371, 372. After careful consideration, we conclude that respondent's conduct was not so egregious as to amount to conduct prejudicial to the administration of justice within the meaning of N.C.G.S. § 7A-376. N.C.G.S. § 7A-376 (2003) (setting forth grounds for censure and removal of judges). In so holding, we do not address the question of whether respondent violated specific provisions of the North Carolina Code of Judicial Conduct. Although helpful in applying the statutory and constitutional prohibitions on judicial behavior, a finding as to whether a judge has violated codes of judicial conduct is not determinative of the central issue of whether her conduct was prejudicial to the administration of justice. In re Edens, 290 N.C. 299, 306, 226 S.E.2d 5, 9 (1976). In Edens, we stated that:
Conduct prejudicial to the administration of justice that brings the judicial office into disrepute has been defined as "conduct which a judge undertakes in good faith but which nevertheless would appear to an objective observer to be notonly unjudicial conduct but conduct prejudicial to public esteem for the judicial office."
Id. at 305, 226 S.E.2d at 9 (quoting Geiler v. Comm'n on Jud'l Qualifications, 10 Cal. 3d 270, 284, 515 P.2d 1, 9 (1973), cert. denied, 417 U.S. 932, 41 L. Ed. 2d 235 (1974)).
Without addressing whether respondent's conduct violated the Judicial Code, we hold that respondent's conduct was not such that it would be, to an objective observer, prejudicial to public esteem for the judicial office.
Respondent's 6 December 1995 order was tantamount to a sanction against Montgomery based upon what respondent believed to be inappropriate conduct. Notably, respondent expressed concern in the order for Montgomery's juvenile client, who, by his own attorney's actions, would have been subjected to confinement in a second state facility several hours away for further evaluation. In sanctioning Montgomery, respondent merely instructed her to abide by a standard practice in Buncombe County District Court. Respondent even fashioned a remedy for Montgomery by giving her an opportunity to object to the order.
When Montgomery filed an objection to the order, essentially requesting a reconsideration, respondent, and to some extent Chief Judge Fowler, logically assumed that respondent was the appropriate judge to reconsider her own order. In Montgomery's subsequently filed motion for recusal, she provided no actual grounds to support a recusal, arguing only that there was a patent conflict of interest based upon respondent's making findings of fact and entering the 6 December 1995 order. Themotion gave no indication that resolution of the matter would necessitate testimony from respondent, and respondent herself never anticipated that she would need to testify at the subsequent hearing. Respondent offered to testify as to her whereabouts on 20 September 1995 only after that issue arose at the 18 April 1996 hearing. Stewart did not object to respondent's offer to testify, stating only, "I have no preference how your Honor chooses to proceed." Thereafter, respondent gave testimony limited to her whereabouts on the date in question.
Respondent did rule on objections to her own examination of witnesses and did call one witness, Wade, to testify. However, the majority of those rulings were in Montgomery's favor, and it appears from Wade's own testimony that she, not respondent, decided her testimony was necessary. Furthermore, Montgomery did not object to respondent's calling Wade as a witness. While respondent never entered an order following the hearing, it appears from the record that respondent's conduct had no impact on the underlying juvenile case nor on any other case pending before her.
Respondent's conduct simply does not rise to the level of those instances of conduct that we have previously determined to be prejudicial to the administration of justice. See, e.g., In re Hill, 357 N.C. 559, 591 S.E.2d 859 (2003) (censuring judge for verbally abusing an attorney and sexual comments and horseplay); In re Brown, 356 N.C. 278, 570 S.E.2d 102 (2002) (censuring judge when on two occasions, the judge caused hissignature to be stamped on orders for which he did not ascertain the contents); In re Stephenson, 354 N.C. 201, 552 S.E.2d 137 (2001) (same outcome where the judge solicited votes from the bench); In re Brown, 351 N.C. 601, 527 S.E.2d 651 (2000) (censure appropriate where the judge consistently issued improper verdicts in DWI cases).
In conclusion, we hold that it was within this Court's authority to adopt the Limitation of Proceedings clause and that the clause does not apply retroactively to bar disciplinary action in this matter. We also conclude that respondent's actions do not constitute conduct prejudicial to the administration of justice. Therefore, pursuant to N.C.G.S. §§ 7A-376 and 7A-377(a) and to Rule 3 of the Rules for Supreme Court Review of Recommendations of the Judicial Standards Commission, it is ordered that the recommendation of the Commission that Judge Shirley H. Brown be censured is hereby rejected.
By order of the Court in Conference, this the 12th day of August, 2004.